UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Gayle A. Bombard

   v.                                Civil No. 18-cv-231-LM
                                      Opinion No. 2019 DNH 036
Nancy A. Berryhill, Acting
Commissioner of Social Security


**O R D E R**

Gayle Bombard seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits.  Bombard moves to reverse the Acting Commissioner's decision, and the Acting Commissioner moves to affirm.  For the reasons discussed below, the decision of the Acting Commissioner is affirmed.


**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the [Administrative Law Judge] deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the Administrative Law Judge's factual findings as long as they are supported by substantial evidence.  42 U.S.C. § 405(g); see

also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).

"Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal citation omitted). "Rather, the court must uphold the Commissioner's findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support her conclusion." Id.

In determining whether a claimant is disabled, the Administrative Law Judge ("ALJ") follows a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). The first three steps are (1) determining whether the claimant is engaged in substantial gainful activity; (2) determining whether she has a severe impairment; and (3) determining whether the impairment meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii).

At the fourth step of the sequential analysis, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a determination of the most a person can do in a work setting despite her limitations caused by impairments, id. § 404.1545(a)(1), and her past relevant work, id.

§ 404.1520(a)(4)(iv).  If the claimant can perform her past relevant work, the ALJ will find that the claimant is not disabled.  See id. § 404.1520(a)(4)(iv).  If the claimant cannot perform her past relevant work, the ALJ proceeds to Step Five, in which the ALJ has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment.  See id. § 404.1520(a)(4)(v).

## BACKGROUND

A detailed factual background can be found in Bombard's statement of facts (doc. no. 9-2) and the Acting Commissioner's statement of facts (doc. no. 10).  The court provides a brief summary of the case here.

On November 16, 2015, Bombard filed an application for disability insurance benefits, alleging a disability onset date of November 15, 2014.  She later amended her disability onset date to May 5, 2015, when she was 51 years old.  She alleged a disability due to degenerative disc disease of the lumbar spine, obesity, bilateral carpal tunnel syndrome, bilateral carpometacarpal osteoarthritis, neck pain, bilateral shoulder pain, bilateral leg pain, anxiety, and depression.  Her last insured date was December 31, 2015.

After Bombard's claim was denied, she requested a hearing in front of an ALJ.  On March 29, 2017, the ALJ held a hearing.

Bombard, who was represented by an attorney, appeared and testified, as did Warren Maxim, an impartial vocational expert.

On July 14, 2017, the ALJ issued an unfavorable decision. He found that Bombard had the following severe impairments: degenerative disc disease of the lumbar spine and obesity. The ALJ also found that Bombard's anxiety and depression were not severe impairments, and that her bilateral carpal tunnel syndrome, neck pain, bilateral shoulder pain, bilateral carpometacarpal osteoarthritis, and bilateral leg pain were not medically determinable.

The ALJ further found that Bombard had the residual functional capacity to

> perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, the claimant could lift twenty pounds occasionally and ten pounds frequently. She could stand and walk for six hours and sit for six hours during an eight hour working day. She was unlimited in the use of her hands and feet to operate controls, push and pull. She could occasionally climb ladders, scaffolds and ropes and occasionally stoop. She could frequently climb ramps and stairs, balance, kneel, crouch and crawl.

Admin. Rec. at 21. In assessing Bombard's residual functional capacity, the ALJ gave substantial weight to the opinion of Dr. Meghana Karande, a state agency medical consultant who reviewed Bombard's medical records.

In response to hypotheticals posed by the ALJ, Maxim, the impartial vocational expert, testified that a person with

Bombard's RFC could perform the job of a hairdresser and a hair salon/shop manager. Because Bombard had performed this work in the past, the ALJ found at Step Four that she was not disabled. In addition, Maxim testified that a person with Bombard's RFC could perform jobs that exist in significant numbers in the national economy. Based on this testimony, the ALJ found in the alternative at Step Five that Bombard was not disabled.

On January 29, 2018, the Appeals Council denied Bombard's request for review, making the ALJ's decision the Acting Commissioner's final decision. This action followed.

## DISCUSSION

Bombard raises three broad claims of error on appeal. She argues that the ALJ erred in: (1) evaluating the severity and effect of Bombard's impairments; (2) weighing the medical opinions in the record; and (3) evaluating Bombard's subjective complaints. The court addresses each argument below.

I.  Bombard's Impairments

Bombard contends that the ALJ erred at Step Two in finding that her bilateral carpometacarpal osteoarthritis[1] was not a severe impairment. She also argues that the ALJ erred in

---

[1] For ease of reading, the court will refer to Bombard's bilateral carpometacarpal osteoarthritis as simply "osteoarthritis."

failing to consider the effects of Bombard's obesity in his RFC assessment, despite the ALJ finding that it was a severe impairment.

### A.    Step Two - Severe Impairments

At Step Two, the ALJ determines based on the record evidence whether the claimant has one or more medically determinable impairments that are severe.  20 C.F.R. § 404.1520(a)(ii).  An impairment or a combination of impairments is severe at Step Two if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  Id. § 404.1520(c).  It is the claimant's burden at Step Two to show that she has a medically determinable severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 146, 149 (1987).

Bombard contends that the ALJ erred in finding that her osteoarthritis was not a medically determinable impairment.  She notes that X-rays of her thumbs taken in February 2017 showed moderate to severe osteoarthritis.  She points to the statements of Dr. Frank Graf, an orthopedic surgeon, who reviewed the X-rays in March 2017 and stated that they showed "advanced degenerative osteoarthritis."  Bombard also notes a September 2015 treatment note with Stefanie Diamond, a physician's assistant, which recorded Bombard's statement that she had a history of hand pain dating back to 2010.  She states that

Diamond and Dr. Graf opined that Bombard's use of her hands and fingers had been limited by osteoarthritis since November 2014. Bombard contends that this evidence shows that her osteoarthritis was a medically determinable severe impairment.

The court notes at the outset that to the extent the ALJ erred in his Step Two finding regarding Bombard's osteoarthritis, any error is harmless. "Errors at Step Two are harmless as long as the ALJ found at least one severe impairment, continued on with the sequential analysis, and considered the effect of all impairments on the claimant's functional capacity." Therrien v. Berryhill, No. 16-CV-185-LM, 2017 WL 1423181, at *4 (D.N.H. Apr. 21, 2017). As discussed further below, the ALJ considered Bombard's hand and wrist impairments when assessing her residual functional capacity. Therefore, any error at Step Two regarding Bombard's osteoarthritis is harmless. See Champine v. Berryhill, No. 16-cv-539-PB, 2018 WL 345843, at *4 (D.N.H. Jan. 10, 2018) ("[W]hen an ALJ errs at step two by failing to determine that an impairment is severe, that error typically is harmless as long as the ALJ considered that impairment in assessing the claimant's residual functional capacity at step four." (internal quotation marks, citation, and alterations omitted)).

Regardless, Bombard has not shown that the ALJ committed error at Step Two regarding her osteoarthritis. Although she

argues that the "ALJ's decision provides no detailed rationale" for finding that her osteoarthritis was not a severe impairment, doc. no. 9-1 at 4, that contention is belied by the record.

In making his Step Two finding regarding Bombard's osteoarthritis, the ALJ discussed the record evidence concerning Bombard's hand, wrist, and thumb issues. The ALJ discussed Dr. Peter Loeser's consultative examination reports in 2014 and 2016, both of which stated that Bombard had normal range of motion in her hands and wrists and contained no findings of a bilateral hand impairment. In addition, the ALJ noted that throughout 2015 and 2016, there was little to no evidence of Bombard complaining of or seeking medical treatment for any issues with her hands and wrists during her various medical appointments. Further, the ALJ also addressed Bombard's reports of daily activity in 2016, in which she admitted performing tasks, including preparing meals and spending hours online, finding that they were inconsistent with significant manipulative limitations. The ALJ also discussed Dr. Karande's opinion that Bombard did not have any manipulative limitations during the relevant period.

Bombard criticizes the ALJ for relying on Dr. Loeser's opinion because Dr. Loeser did not have access to her February 2017 X-rays. Those X-rays, however, were taken over a year after the last date Bombard was insured, and do not establish

that Bombard's osteoarthritis was a medically determinable severe impairment before the date last insured. See Joyce v. Astrue, No. 10-CV-035-JD, 2010 WL 5138996, at *3 (D.N.H. Dec. 9, 2010) ("To the extent Joyce attempts to base her claims on medical evidence that was generated after her last-insured date, such evidence has limited utility. Joyce would be entitled to benefits only if she could show that she was disabled for the requisite period beginning before June 30, 2002."); Desjardins v. Astrue, No. CIV.A 09-2-B-W, 2009 WL 3152808, at *4 (D. Me. Sept. 28, 2009) ("At Step 2, it is the claimant's burden to show that an impairment was severe before the date last insured."), report and recommendation adopted by 2009 WL 3678257 (D. Me. Nov. 3, 2009). Indeed, Bombard stated that her hand pain got worse after the last date she was insured. Further, the ALJ noted that Diamond examined Bombard in January 2017 and stated that Bombard had only "mild" osteoarthritis.

In sum, Bombard has not shown that the ALJ erred in his Step Two determination with regard to her osteoarthritis.

B.  Obesity

Bombard seeks reversal and remand on the basis that the ALJ found a severe impairment of obesity at Step Two but failed to assess any resulting functional limitations, in contravention of Social Security Ruling ("SSR") 02-1p. See Titles II & XVI:

Evaluation of Obesity, SSR 02-1P, 2002 WL 34686281, 67 Fed. Reg. 57859 (Sept. 12, 2002). The Acting Commissioner contends that the ALJ appropriately explained the impact of Bombard's obesity in his RFC assessment.

"The combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1P, 67 Fed. Reg. at 67863. "SSR 02-1p requires an individualized assessment of the impact of obesity on a claimant's functioning." Fothergill v. Astrue, No. 2:11-CV-247-DBH, 2012 WL 1098444, at *2 (D. Me. Mar. 29, 2012), report and recommendation adopted by 2012 WL 1313488 (D. Me. Apr. 17, 2012); SSR 02-1p, 67 Fed. Reg. at 57862 ("An assessment should . . . be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."). Thus, when an ALJ finds a severe impairment of obesity, he finds that "the plaintiff's obesity was determined to cause more than a slight limitation in work-related function" and must "describe how obesity affected the plaintiff's RFC." Kaylor v. Astrue, No. 2:10-CV-33-GZS, 2010 WL 5776375, at *3 (D. Me. Dec. 30, 2010), report and recommendation adopted by 2011 WL 487844 (D. Me. Feb. 7, 2011). The claimant, however, bears the burden to identify evidence showing that her obesity caused more severe functional limitations than were found by the ALJ. See Drouin v. Colvin,

No. 1:14-CV-544-DBH, 2015 WL 7259562, at \*4 (D. Me. Oct. 2, 2015), report and recommendation adopted by 2015 WL 7194881 (D. Me. Nov. 16, 2015).

The ALJ found at Step Two that Bombard's obesity was a severe impairment. The ALJ cited SSR 02-1p and stated that he "has considered the effects of the claimant's obesity on her other impairments" and that Bombard's "limitations due to obesity are reflected in the . . . residual functional capacity." Admin. Rec. at 21. The ALJ discussed medical records relating to Bombard's obesity, stating that Bombard's treating sources opined that it affected Bombard's overall condition, but noting that Bombard remained "fully weight bearing." Id.

Bombard argues, nevertheless, that the ALJ could not have considered her obesity in making his RFC assessment because his findings "were identical to the RFC opinion of [Dr.] Karande that was based only upon a severe degenerative disc disease impairment." Doc. no. 9-1 at 8. In other words, Bombard contends that the ALJ did not take her obesity into account in making his RFC assessment because he relied heavily on Dr. Karande's opinion, which, Bombard contends, did not take her obesity into account. Contrary to Bombard's argument, however, Dr. Karande did consider Bombard's obesity and discussed it in the context of Bombard's functional limitations. See Admin.

Rec. at 105.  Therefore, Bombard has not shown that the ALJ failed to consider her obesity in assessing her residual functional capacity.  See e.g., Spencer v. Colvin, No. 1:13-CV-00171-JAW, 2014 WL 1806862, at *5 (D. Me. May 7, 2014) (affirming Commissioner's decision and noting that "[w]hile the discussion of obesity is not expansive, the ALJ plainly considered it in assessing Plaintiff's residual capacity").

In addition, Bombard does not identify any evidence that her obesity imposed greater functional limitations than those found by the ALJ.  Therefore, because Bombard has not shown that her obesity caused additional functional limitations, she has not shown that the ALJ committed reversible error.  See Venus v. Berryhill, No. 17-CV-482-PB, 2019 WL 157296, at *8-9 (D.N.H. Jan. 9, 2019); Jessica B. v. Berryhill, No. 17-cv-294-NT, 2018 WL 2552162, at *7 (D. Me. June 3, 2018); Leonard v. Colvin, No. CV 15-155S, 2016 WL 3063853, at *11 (D.R.I. Mar. 29, 2016), report and recommendation adopted by 2016 WL 3077874 (D.R.I. May 31, 2016).  For those reasons, Bombard has not shown that the ALJ erred in evaluating the severity and effect of her impairments.

## II. Medical Opinions

Bombard contends that the ALJ erred in weighing the medical opinions in the record.  Specifically, Bombard argues that the

ALJ erroneously gave limited weight to the opinions provided by Dr. Graf and Diamond.  She also contends that the ALJ erroneously gave significant weight to Dr. Karande's opinion.

"An ALJ is required to consider opinions along with all other relevant evidence in a claimant's record." Ledoux v. Acting Comm'r, Soc. Sec. Admin., No. 17-cv-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018).  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

The ALJ analyzes the opinions of state agency consultants, treating sources, and examining sources under the same rubric. See id.; 20 C.F.R. § 404.1527(c).  The ALJ must consider "the examining relationship, treatment relationship (including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship), supportability of the opinion by evidence in the record, consistency with the medical opinions of other physicians," along with the doctor's expertise in the area and any other relevant factors. Johnson v. Berryhill, No. 16-cv-375-PB, 2017 WL 4564727, at *5 (D.N.H. Oct. 12, 2017).

The court addresses the opinions of Diamond, Dr. Graf, and Dr. Karande in turn.

A.   Diamond

Diamond, a physician's assistant, saw Bombard in September and November 2015.  She does not appear to have seen Bombard again until January 2017, when she performed a detailed examination of Bombard's hands and ordered the February 2017 X-rays.

On March 17, 2017, Diamond filled out a medical opinion form, which stated that Bombard had impairments that limited the use of her hands and fingers.  She further opined that those impairments had existed since Bombard's original alleged onset date of November 15, 2014.

The ALJ addressed Diamond's assessment in his decision, noting that, as a physician's assistant, Diamond was not an acceptable medical source and therefore could not offer a medical opinion under 20 C.F.R. § 404.1527(a).[2]  See 20 C.F.R. § 404.1513(a) (physician's assistants not listed among those deemed acceptable medical sources).  And, although she treated

_____

[2] Bombard filed her application for benefits before March 27, 2017.  For claims filed after March 27, 2017, a physician's assistant may be an acceptable medical source for ailments within his or her licensed scope of practice.  See 20 C.F.R. § 404.1502(a)(8).

Bombard, Diamond is not a "treating source" whose opinion may be entitled to controlling weight. Taylor v. Astrue, 899 F. Supp. 2d 83, 88 (D. Mass. 2012) (noting that only "acceptable medical sources" can be considered "treating sources"). The ALJ was thus within his discretion to give Diamond's opinion less weight than the opinions of acceptable medical sources. See SSR 06-03P, 2006 WL 2329939, at *5 (Aug. 9, 2006) ("The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' . . . ."). With regard to a non-acceptable medical source under SSR 06-3p, an ALJ is obligated only to "explain the weight given to" her opinion "or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow his reasoning." Robert L. v. Berryhill, No. 1:17-CV-00348-JDL, 2018 WL 3599966, at *9 (D. Me. July 27, 2018).

Here, the ALJ addressed Diamond's opinion and concluded that the medical record did not contain objective medical evidence that supported the opinion. He also found that Diamond did not relate her opinion as to Bombard's functional limitations—which she offered after the last date Bombard was insured (Dec. 31, 2015)—back to the relevant period for purposes of Bombard's disability. The ALJ noted that Diamond's treatment notes from

2015 do not support her 2017 opinion as to Bombard's limitations.

Bombard challenges the ALJ's evaluation of Diamond's opinion, noting that Diamond stated that Bombard's impairments had existed since 2010. Bombard concedes that, as the ALJ noted, Diamond did not make a similar statement as to Bombard's functional limitations or suggest that those limitations existed prior to 2017. She argues nevertheless that the ALJ should have interpreted Diamond's opinion as stating that Bombard had the assessed functional limitations throughout the relevant period. In addition, Bombard argues that Diamond's treatment notes from 2015 are consistent with her 2017 opinion.

Bombard's arguments are unpersuasive. The ALJ's determination that Diamond's 2015 treatment notes are inconsistent with her 2017 opinion is supported by substantial evidence. As the ALJ noted, Diamond did not examine Bombard's hands during either of her appointments in 2015, and the September 2015 treatment note states that Bombard reported her hand pain got better after November 2010. Indeed, as mentioned above, Bombard conceded that her hand pain got worse after the last date she was insured.

In addition, although Bombard urges the court to adopt a different interpretation of Diamond's statement—or lack thereof—concerning whether Bombard's functional limitations

related back to the relevant period, it is the ALJ's, not the
court's, job to draw inferences from and resolve conflicts in
the record evidence. Irlanda Ortiz v. Sec'y of Health & Human
Servs., 955 F.2d 765, 769 (1st Cir. 1991). The ALJ's
interpretation is supported by substantial evidence in light of
Diamond's treatment notes and the medical evidence in the record
during the relevant period.

For these reasons, Bombard has not shown any error in the
ALJ's evaluation of Diamond's opinion.


        B.  Dr. Graf

Dr. Graf examined Bombard and reviewed her medical records
in March 2017. He opined that Bombard's ability to grasp with
her hands, manipulate with her fingers, and reach with her arms
were "all impaired and limited." He also wrote that the
limitations in his opinion existed since November 15, 2014,
Bombard's original alleged onset date.

The ALJ gave Dr. Graf's opinion limited weight for several
reasons. First, he noted that despite opining that Bombard's
use of her hands, fingers, and arms were all "impaired and
limited," Dr. Graf provided no "explanation as to how or to what
extent" Bombard was limited. Admin. Rec. at 14. The ALJ also
noted that Dr. Graf's opinion "does not reflect an accurate
assessment of the medical records" because he selectively cited

records that supported Bombard's claim but ignored records that undermined her claim.  Id.  For example, the ALJ pointed to Dr. Graf's discussion of a January 2015 psychological evaluation of Bombard, in which the psychologist opined that Bombard's back and wrist pain would complicate her return to work.  The ALJ noted that in contrast, Dr. Graf ignored a June 2015 physical examination by a doctor of osteopathic medicine, which stated that Bombard had unlimited use of her hands and could frequently perform gross and fine manipulation.

In addition, the ALJ noted that Dr. Graf was retained for advocacy, not treatment, a statement that Bombard does not dispute.  Finally, the ALJ discussed that Dr. Graf's opinion was offered after the last date Bombard was insured and there was no objective medical evidence to support the opinion that his assessed limitations related back to the relevant period.

Bombard takes issue with the ALJ's reasoning for discounting Dr. Graf's opinion.  She argues that the ALJ's statement that Dr. Graf "'was retained for advocacy, not treatment' does not provide any independent reason for giving his reviewing and examining opinion 'little weight.'"  Doc. no. 9-1 at 9.  Bombard is mistaken.  Where "the record supports the inference that a medical opinion was obtained specifically for the purpose of bolstering a claimant's case, an ALJ can properly give it less weight."  Egan v. Astrue, No. 11-CV-147-JL, 2012 WL

274483, at *5 n.16 (D.N.H. Jan. 31, 2012) (citing cases) (internal quotation marks, citations, and alterations omitted).

Bombard also argues that her X-rays support Dr. Graf's opinion. But, as discussed above, the ALJ offered several justifications that are supported by the record, and which Bombard does not dispute, to discount Dr. Graf's opinion. Therefore, the ALJ did not err in evaluating Dr. Graf's opinion or the medical opinion evidence generally. See Black v. Acting Comm'r, Soc. Sec. Admin., No. 17-CV-350-JD, 2018 WL 2002484, at *4 (D.N.H. Apr. 30, 2018) (holding that the ALJ did not improperly discount Dr. Graf's opinion when his examination and review were done after the plaintiff's last insured date and his opinion was not consistent with the plaintiff's record during the relevant period).

### C.   Dr. Karande

As discussed supra, the ALJ gave significant weight to the March 2016 opinion of Dr. Karande, a state agency medical consultant who did not examine Bombard. The ALJ agreed with Dr. Karande's opinion as to Bombard's functional limitations and included them in his RFC assessment. He explained that Dr. Karande is a highly-qualified expert in social security disability evaluation and that her opinion was supported by the medical records and other opinion evidence.

Bombard raises a single challenge to the weight the ALJ afforded to Dr. Karande's opinion: that the ALJ failed to address evidence post-dating Dr. Karande's opinion, including the February 2017 X-rays showing osteoarthritis and Diamond's and Dr. Graf's opinions.  It is true that a reviewing consultant's opinion that is based on a "significantly incomplete record"—one where evidence post-dating the opinion materially changes the record on which it was based—cannot be accorded significant weight or provide substantial evidence to support an ALJ's findings.  Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007).  Here, however, Dr. Karande's opinion was not based on a significantly incomplete record.

First, the additional medical evidence post-dating Dr. Karande's opinion that Bombard cites was adduced after December 31, 2015, the last date Bombard was insured.  And, as the ALJ explained, that evidence does not provide assessed functional limitations for the period when Bombard was insured.  Because for purposes of disability insurance benefits the ALJ must make his or her disability determination as of the date last insured, medical evidence after that date which does not relate back to the relevant period does not undermine a reviewing consultant's opinion.  See, e.g., Pariseau v. Astrue, No. CA 07-268 ML, 2008 WL 2414851, at *14 (D.R.I. June 13, 2008) (finding that ALJ could rely on state agency opinion that did not take into

account medical records post-dating the claimant's last insured date).

In addition, contrary to Bombard's contention, the ALJ specifically addressed her February 2017 X-rays, see Admin. Rec. at 25, Diamond's opinion, see id. at 15, 16, 25, and Dr. Graf's opinion, see id. at 14, 15, 16, 25. The ALJ explained why none of this evidence supported a finding of disability. Therefore, Bombard has not shown that the ALJ erred in evaluating Dr. Karande's opinion.

For these reasons, Bombard has not shown that the ALJ erred in evaluating the medical opinion evidence.

III. Bombard's Subjective Complaints

Bombard contends that the ALJ erred in his evaluation of her subjective complaints by failing to follow the directives in SSR 16-3p.

SSR 16-3p provides guidance to ALJs when they assess claimants' "symptoms, including pain, under 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)." Coskery v. Berryhill, 892 F.3d 1, 4 (1st Cir. 2018). Under the ruling, "an ALJ determining whether an applicant has a residual functional capacity that precludes a finding of disability must evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his

or her ability to perform work-related activities." Id.
(internal quotation marks omitted).

> Moreover, SSR 16-3p provides that, in conducting that
> inquiry, the ALJ must examine the entire case record,
> including the objective medical evidence; an
> individual's statements about the intensity,
> persistence, and limiting effects of symptoms;
> statements and other information provided by medical
> sources and other persons; and any other relevant
> evidence in the individual's case record.

Id. (internal quotation marks omitted).

In evaluating Bombard's subjective complaints, the ALJ
discussed Bombard's testimony concerning the effects of her back
and hand pain, as well as her obesity. The ALJ addressed the
evidence in the record that he found did not fully support
Bombard's subjective complaints. Specifically, the ALJ noted
Bombard's daily activities, her statements in treatment notes
concerning her conditions, and medical evidence in the record
concerning Bombard's symptoms. The ALJ concluded that Bombard's
testimony regarding the intensity, persistence, and limiting
effects of her symptoms were not credible to the extent that
they were inconsistent with the RFC assessment.

Bombard argues that the ALJ contravened SSR 16-3p's
instruction that an ALJ "not disregard an individual's
statements about the intensity, persistence, and limiting
effects of symptoms solely because the objective medical
evidence does not substantiate the degree of impairment-related

symptoms alleged by the individual."  SSR 16-3p, 82 Fed. Reg. at 49465.  The ALJ, however, did not violate that rule.  While the ALJ did rely on the objective medical evidence in rejecting Bombard's allegations, as discussed above, the ALJ also noted other factors, including Bombard's daily activities and her statements to medical providers concerning her symptoms. Therefore, Bombard's argument is unpersuasive.

**CONCLUSION**

For the foregoing reasons, Bombard's motion to reverse (doc. no. 9) is denied, and the Acting Commissioner's motion to affirm (doc. no. 11) is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 11, 2019

cc:  Counsel of Record